## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AOK TOOLING LTD., a Hong Kong Limited Liability Company; and AOK TOOLING LTD., a People's Republic of China Limited Liability Company, | CASE NO: |
| Plaintiffs, | JURY DEMANDED |
| v. | |
| GENTOX MEDICAL SERVICES LLC, a Pennsylvania limited liability company, | |
| Defendant. | |

## COMPLAINT

Plaintiffs AOK Tooling Ltd. (HK) and AOK Tooling Ltd. (PRC) (collectively, "Plaintiffs")

complain against Gentox Medical Services, LLC ("Defendant") as follows:

## INTRODUCTION

1.      This is an action for infringement of an unregistered trademark, unfair competition,

and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

2.      These claims arise out of Defendant's infringement and use of Plaintiffs' distinctive

common law AOK TOOLING LIMITED trademark, which identifies and distinguishes Plaintiffs'

products and services, and which Defendant is making unauthorized and unlawful use of the

identical mark in the importation, promotion, marketing, offers to sell, and sale of goods in the

United States.  These goods are not genuine goods originating from Plaintiff; or, in the alternative,

the goods are gray market goods otherwise not intended for sale in the United States that are

materially different from the goods of Plaintiffs sold in the United States exclusively through Plaintiffs' bona fide authorized distribution channel, and therefore they are illegal.

3.      Plaintiffs seek permanent injunctive relief, actual damages, Defendant's profits, recovery of Plaintiffs' costs and reasonable attorney's fees, and all other relief authorized by the Lanham Act and common law.

## JURISDICTION AND VENUE

4.      This action arises under the federal Lanham Act, 15 U.S.C. § 1051 *et seq*.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(b).  This Court also has jurisdiction pursuant to 28 U.SC. § 1332 as there is diversity between the parties and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5.      This Court may properly maintain personal jurisdiction over Defendant because Defendant is a limited liability company formed in and under the laws of Pennsylvania, and, as such, Defendant is a resident in the forum, at home in Pennsylvania, has consented to be sued in Pennsylvania and is subject to the jurisdiction of this Court.  In addition, Defendant's contacts with the state of Pennsylvania and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).  Defendant resides in and conducts business in this District, and a substantial part of the acts, events, or omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES

7.      Plaintiff AOK Tooling Ltd. (PRC) is a limited liability company organized under the laws of the People's Republic of China having offices in Shen Zhen, China.

2

8.      Plaintiff AOK Tooling Ltd. (HK) is a limited liability company organized under the laws of Hong Kong having offices in Hong Kong.

9.      Defendant is a limited liability company organized under the laws of Pennsylvania, who, according to the records of the Pennsylvania Department of State's official government website, has a registered office at 11000 First Avenue, King of Prussia, Montgomery County, PA 19406.  That registered address, however, may be a typographical error, such that Defendant's office is located instead at "1100" First Avenue, King of Prussia.  Defendant may be served at its registered address or on its officer, director, and managing agent Chief Executive Officer, Uriah Kennedy at 1513 N. Hill Field Rd, Suite 3, Layton, UT 84104-3600.

## FACTS COMMON TO ALL COUNTS

**A.      Plaintiffs, Their N-95 Masks, AOK TOOLING LIMITED Trademark, and United States Authorized Distribution Channel**

10.      Plaintiffs specialize in the design and fabrication of high-quality respirators and personal protective equipment, among other products.

11.      All of Plaintiffs' NIOSH[1]-certified 3D N-95 Face Masks ("AOK N-95 Masks") bear Plaintiffs' common law trademark; namely, "AOK TOOLING LIMITED" (the "AOK TOOLING LIMITED Mark"), which Plaintiffs use as a source identifier for their AOK N-95 Masks.

12.      An N-95 mask is a particulate filtering facepiece respirator that meets the NIOSH N-95 classification for air filtration, meaning that it filters at least ninety-five (95) percent of

---

[1] "NIOSH" stands for National Institute for Occupational Safety and Health, which is the United States Federal agency responsible for conducting research and making recommendations for the prevention of work-related injuries and illnesses.

airborne particles, and is designed for industrial use, healthcare, the "do-it-yourself" market, and other uses.

13.     Plaintiffs own nationwide common law rights to the AOK TOOLING LIMITED Mark based on the continuous and extensive bona fide use of this mark by Plaintiffs and their authorized distributors in interstate commerce in and throughout the United States to identify, distinguish, and promote Plaintiffs' AOK N-95 Masks and other goods, over the past seven years since at least 2013.

14.     Plaintiffs use AOK TOOLING LIMITED as a source-identifying trademark for their mask manufacturing, sales and distribution services, in addition to their AOK N-95 Masks.

15.     Plaintiffs' AOK N-95 Masks are intended to be sold exclusively in the United States only by Plaintiffs' bona fide authorized distributors like 12th Man Technologies, Inc. ("12th Man").  Plaintiffs sell their AOK N-95 Masks and other products only to authorized dealers like 12th Man, who in turn sells Plaintiffs' AOK N-95 Masks to customers throughout the United States.

16.     12th Man, in particular, sells Plaintiffs' AOK N-95 Masks under the registered trademark SOFTSEAL®, and each mask has the common law AOK TOOLING LIMITED affixed on it by permanent ink stamp.

17.     Consumers recognize the AOK TOOLING LIMITED Mark and SOFTSEAL® as being associated with high-quality, fully certified N-95 Masks.

18.     Because of the quality and reliability of Plaintiffs' AOK N-95 Masks, consumers trust the AOK TOOLING LIMITED and SOFTSEAL® brands and associate those names with the source of high-quality and reliable products.

4

19.    Plaintiffs' authorized distributors like 12th Man offer value-added services that boost Plaintiffs' goodwill, including, but not limited to, dedicated website URL www.softsealmask.com, mask sizing and care information, schematics, health guidance, explanations of NIOSH Certification and lab testing reports, use instructions, various other reference materials, and direct contact information for product questions, returns, replacements, and the like.

20.    Authorized distributor 12th Man is also bound by a written distribution agreement which further acts to protect the good name of AOK, including by:

    a.    Requiring 12th Man to facilitate packaging, certification filings including NIOSH and Food and Drug Administration ("FDA"), testing, certification procedures and document control necessary for approval.

    b.    Requiring 12th Man to maintain accurate records as to which products are delivered to which purchaser in order to enable prompt product tracking, correction and recall by Plaintiffs.

    c.    Allowing Plaintiffs to terminate for breach of the agreement, government or regulatory action, or insolvency, which may negatively Plaintiffs' AOK TOOLING LIMITED brand.

    d.    Requiring 12th Man to agree to distribute Plaintiffs' products only for the approved intended use, claims and labeling, whereby 12th Man must mark all packaging with required user warnings and cautions.

    e.    Allowing Plaintiffs to inspect 12th Man's facilities and confirm compliance with Plaintiffs' quality control standards.

    f.    Forbidding 12th Man from customizing or modifying Plaintiffs products.

21.     Plaintiffs warrant the AOK N-95 Masks that they sell through their authorized distributors, and provide support for distributors' warranty to customers, including return and replacement services and refunds.

22.     When Plaintiffs' products, including the AOK N-95 Masks, are sold outside the authorized distributor channel, Plaintiffs have no transparency as it relates to the supply chain and cannot know whether the product has been appropriately handled, stored, shipped, packaged, distributed with appropriate instructions and certification information, etc.  Because Plaintiffs cannot vouch for the integrity of the supply chain, Plaintiffs cannot guarantee the quality or integrity of products sourced from the gray market.  In this context, goods sourced from the gray market are those that were not intended by the manufacturer to be sold in the United States.

23.     Indeed, it is common for unauthorized sellers to sell diverted products of inferior or otherwise questionable quality in shipments to unwitting consumers. *See* https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.

**B.     Defendant, Who Is Not An Authorized Distributor of Plaintiffs, Is Selling AOK N-95 Masks, or What Appear to be AOK N-95 Masks in the United States, Which Are Either Knock-Offs or Gray Market Goods Intended for Foreign Markets.**

24.     Defendant is a provider of medical services and devices whose company website is located at http://www.gentoxmedicalservices.com/.

25.     Defendant is not an authorized distributor of Plaintiffs.

26.     On April 27, 2020, Plaintiffs were alerted by Susan Gustafson, an Infection Prevention Consultant with the state of Minnesota Division of Homeland Security and Emergency Management ("HSEM") that HSEM had received communications from Defendant who claimed

it had a shipment of a significant number of Plaintiffs' AOK N-95 Masks for resale in commerce in the United States and intended to solicit HSEM's business for profit.

27.    Ms. Gustafson expressed concern that the product was a "possible counterfeit."

28.    Below is a photograph of the product that Defendant offered for sale to HSEM and which photograph HSEM in turn sent to Plaintiffs:



29.    As shown in the image appearing in the immediately preceding paragraph, the AOK TOOLING Mark is affixed to and prominently displayed on the N-95 mask.

30.    Plaintiffs have no records of any sale of N-95 Masks by them to Defendant.

31.    Plaintiffs' authorized distributors, including 12th Man, have confirmed that they never sold AOK N-95 Masks to Defendant for resale.

32.     When a representative of authorized distributor 12th Man contacted Gentox and requested that Gentox produce a purchase order for the AOK N-95 Masks, Defendant refused to do so.

33.     Given the forgoing, Plaintiffs believe that the AOK N-95 Masks offered and sold by Defendant are knock-offs of Plaintiffs' genuine products using Plaintiffs' AOK TOOLING LIMITED trademark without Plaintiffs' authorization, imported from sources other than Plaintiffs and their authorized distributors like 12th Man, which could reach frontline health care workers and consumers, putting lives at risk.

34.     Defendant's sale of knock-off AOK N-95 Masks creates a likelihood of confusion with Plaintiffs' authorized AOK N-95 Masks, particularly to the extent:

    a.    Plaintiffs' AOK TOOLING LIMITED mark is a strong mark that is distinctive, and on a trademark strength spectrum are at least fanciful or arbitrary, and well-recognized by the consuming public;

    b.    the mark used without authorization by Defendant, "AOK Tooling Limited", is identical to Plaintiffs' mark;

    c.    the mask goods sold by Defendant are the identical product type as Plaintiffs' mask goods;

    d.    the parties' customers and potential customers are identical; and

    e.    there has been actual confusion by consumers.

35.     In the alternative, to the extent Defendant asserts that it secured the products at issue from Plaintiffs, Defendant's AOK N-95 Masks are unauthorized, illegal gray market goods not intended for sale in the United States that are materially different from the goods that Plaintiffs and their authorized distributors sell in the United States.

36.     The gray market sales by Defendant within the United States of Plaintiffs' products that are materially different from the Plaintiffs' products sold by Plaintiffs' authorized distributors within the United States are likely to cause confusion among Plaintiffs' customers and prospective customers.

37.     The version of AOK N-95 Mask apparently sold by Defendant, pictured above in paragraph 28, is Model 20160001 (TC-84A-8091), while the product Plaintiffs generally offer in the United States is Model 20180022 (TC-84A-8449).

38.     Although the two models are similar in appearance, Model 20180022 (TC-84A-8449) has a bigger nose bridge, which offers a better fit (*i.e.*, less air leakage) and is more suitable for healthcare workers.  All N95 masks are required to go through a fit test when used by healthcare professionals, and Model 20180022 (TC-84A-8449) would offer a much better seal against contaminates.

39.     The specific products of Defendant pictured above in paragraph 28 (if in fact manufactured by Plaintiffs) were also produced only as part of a "sample" batch as indicated by numbering appearing on the mask, not a standard production run.  They are intended only for Plaintiffs' limited solicitation purposes.

40.     The products of Defendant pictured above in paragraph 28 are also packaged in a materially and substantially different way than Plaintiffs' authorized products, including those distributed by 12th Man.  Representative images of 12th Man's AOK N-95 Mask packaging is as follows:

 

41.    Upon information and belief, Defendant does not distribute its AOK N-95 Masks with appropriate instructional and reference information or warranty terms.

42.    Upon information and belief, Defendant's AOK N-95 Mask violate NIOSH regulations, including because Defendant has not included in every package instructions for use, whereas Plaintiffs' authorized products are NIOSH compliant.

43.    Defendant's AOK N-95 Masks, sold outside the authorized channel, are not supported by Plaintiffs' warranty or ability to implement product recalls.

44.    Upon information and belief, Defendant has advertised and sold Plaintiffs' product at different pricing relative to the pricing available from authorized dealers such as 12th Man, which is likely to be concerning to customers as indicative of counterfeiting or disreputable price gouging.

45.     Upon information and belief, Defendant is able to offer different pricing than Plaintiffs' authorized distributors because it acquires Plaintiffs' product from emerging overseas markets including mainland China where the pricing of the product is lower than it is in the United States and because Defendant does not have an authorized distributorship agreement with Plaintiffs where Plaintiffs could set pricing controls to manage their brand reputation and consistency.

46.     The above-described differences are material because, among other things, they:

    a.     Diminish Plaintiffs' ability to offer post-sale customer service and quality control;

    b.     Diminish Plaintiffs' ability to effectively conduct a recall or take other market action with respect to a product;

    c.     Eviscerate Plaintiffs' ability to attest to the integrity of the supply chain, including assessing whether the product has been appropriately handled, stored, shipped, etc.;

    d.     Diminish Plaintiffs' ability to guarantee the quality or integrity of Plaintiffs' products;

    e.     Do not provide customers the same quality and service benefits and assurances as are provided by Plaintiffs through their tightly-controlled agreement with, for example, 12th Man as an authorized distributor;

    f.     Cause customers to question the authenticity, reliability, and quality of Plaintiffs' products;

    g.     Create a likelihood of customer confusion as to the source of the products and the warranties offered on those products;

h.      Create a likelihood of customer confusion by instigating suspicion about whether the product is knock-off, "bootleg," a "fake replica," a "cheap version," or gray market;

i.      Create a likelihood of customer confusion by instigating suspicion about whether the product has been tampered with or altered;

j.      Create a likelihood of customer confusion by instigating suspicion about whether the product is authorized for sale in the United States by the FDA;

k.      Create a likelihood of customer confusion by instigating suspicion, frustration, or concern about foreign-market pricing as compared to United States market pricing;

l.      Cause customer confusion, doubt, disappointment or frustration when product expectations are not met;

m.      Cause customer confusion, disappointment or frustration when Plaintiffs refuse to honor their manufacturer's warranty or refuse to return, refund, or exchange a product not purchased from Plaintiffs or through their authorized distributors;

n.      Concern the sale of goods that are not fully authorized by the FDA for sale in the United States or NIOSH; and,

o.      Tarnish the commercial magnetism of the AOK TOOLING LIMITED trademark.

47.      On May 26, 2020, Plaintiffs sent a demand letter to Defendant's Chief Executive Officer Uriah Kennedy.  Plaintiffs demanded that Defendant provide sales information, evidence that it purchased the product at issue from Plaintiffs, and a guarantee that it will not sell Plaintiffs'

AOK N-95 Masks without authorization.  A true and correct copy of Plaintiffs' May 26, 2020 letter is attached as **Exhibit A.**

48.     Defendant has never responded to Plaintiffs' May 26, 2020 letter, addressed Plaintiffs' enumerated concerns or provided the requested information or assurances.

**COUNT I**
**Infringement of an Unregistered Trademark**
**(15 U.S.C. § 1125(a))**

49.     Plaintiffs repeat and reincorporate each allegation set forth in Paragraphs 1 through 48 above as if each were fully set forth herein.

50.     This is an action for violations of the Lanham Act § 43(a), 15 U.S.C. § 1125(a), for trademark infringement of an unregistered mark, the AOK TOOLING LIMITED Mark.

51.     Plaintiffs are the owners of the unregistered AOK TOOLING LIMITED Mark.

52.     Plaintiffs own nationwide common law rights to the AOK TOOLING LIMITED Mark based on the continuous and extensive bona fide use of this mark by Plaintiffs and their authorized distributors in interstate commerce in the United States to identify, distinguish, and promote Plaintiffs' AOK N-95 Masks and other products, over the past seven years since at least 2013.

53.     The AOK TOOLING LIMITED Mark is an enforceable, valid and subsisting trademark in full force and effect throughout the United States created by Plaintiffs to signify and distinguish their products and services.

54.     Plaintiffs were the first to use the AOK TOOLING LIMITED Mark in commerce in the United States and have priority of trademark use over Defendant, who, long after Plaintiffs' first trademark use, recently began using the identical AOK TOOLING LIMITED Mark in interstate commerce in the United States without authorization from Plaintiffs.

55.     Defendant is not an authorized distributor of Plaintiffs.

56.     Plaintiffs have no records of any sale of N-95 Masks by them to Defendant.

57.     Plaintiffs' authorized distributors, including 12th Man, have confirmed that they never sold AOK N-95 Masks to Defendant for resale.

58.     Plaintiffs believe that the AOK N-95 Masks offered and sold by Defendant are knock-offs of Plaintiffs' genuine products using Plaintiffs' AOK TOOLING LIMITED trademark without Plaintiffs' authorization, imported from sources other than Plaintiffs and their authorized distributors like 12th Man, which could reach frontline health care workers and consumers, putting lives at risk.

59.     With Defendant's use of the identical AOK TOOLING LIMITED Mark on infringing knock-off N-95 masks, Defendant is engaged in trademark infringement because, Defendant's knock-off product is confusingly similar to the genuine Plaintiffs' N-95 Masks.

60.     Defendant falsely marks its goods and services with the AOK TOOLING LIMITED Mark and confuses the public with respect to the genuine AOK TOOLING LIMITED goods when, in fact, those goods are not approved nor authorized by Plaintiff, the owner of the AOK TOOLING LIMITED mark, to be sold in the United States.

61.     Defendant's unauthorized actions with respect to the infringing knock-off AOK TOOLING LIMITED goods, falsely associates or falsely suggests to consumers, that (i) Defendant is affiliated with the genuine AOK TOOLING LIMITED mark and brand, and that (ii) Defendant's knock-off goods are genuine and approved AOK TOOLING LIMITED goods.

62.     Consumers are either confused or are likely to be confused by Defendant's use of the AOK TOOLING LIMITED Mark with the Plaintiffs' genuine AOK TOOLING LIMITED goods.

63.    Defendant's sale of knock-off AOK N-95 Masks creates a likelihood of confusion with Plaintiffs' authorized AOK N-95 Masks, particularly to the extent:

      a.    Plaintiffs' AOK TOOLING LIMITED mark is a strong mark that is distinctive, and on a trademark strength spectrum are at least fanciful or arbitrary, and well-recognized by the consuming public;

      b.    the mark used without authorization by Defendant, "AOK Tooling Limited", is identical to Plaintiffs' mark;

      c.    the mask goods sold by Defendant are the identical product type as Plaintiffs' mask goods;

      d.    the parties' customers and potential customers are identical; and

      e.    there has been actual confusion by consumers.

64.    Defendant's unconsented use of Plaintiffs' AOK TOOLING LIMITED mark affixed to products in interstate commerce was and is willful, deliberate, intentional and in bad faith, in light of the identical reproduction of the AOK TOOLING LIMITED mark on the product.

65.    Upon information and belief, Defendant, with specific and personal knowledge of the widespread recognition of the AOK TOOLING LIMITED goods among the relevant segment of the market in the United States, and with the specific intent to exploit that recognition, marketed and offered for sale a knock-off product using an identical and therefore confusingly similar mark. Defendant intended that its customers believe that the infringing goods are sponsored, approved by or emanate from Plaintiffs with the intent to reap the benefit of Plaintiffs' goodwill and reputation.

66.    After being notified of its misconduct, Defendant failed to take action to halt its offer for sale of Plaintiffs' products.

67.     Defendant has continued to supply its AOK TOOLING LIMITED product even after it knew or had reason to know that it was engaging in violations of 15 U.S.C. § 1125.

68.     Defendants' unauthorized use of the AOK TOOLING LIMITED Mark has infringed upon and materially damaged the value of the AOK TOOLING LIMITED mark and caused significant damage to Plaintiffs and their business relationships.

69.     As a proximate result of Defendant's actions, Plaintiffs have suffered, and continue to suffer immediate and irreparable harm that will continue unless enjoined by the Court.

70.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will continue to suffer irreparable harm.

71.     Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

72.     Plaintiffs are entitled to recover their actual damages caused by Defendant's infringement of the AOK TOOLING LIMITED Mark and to disgorge Defendant's ill-gotten profits from its willfully infringing sales and unjust enrichment.

73.     Plaintiffs are entitled to enhanced damages and attorney's fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the AOK TOOLING LIMITED Mark.

**COUNT II**
**In the Alternative, Federal Unfair Competition,**
**False Description, and False Designation of Origin**
**(15 U.S.C. § 1125(a))**

74.     Plaintiffs repeat and reincorporate each allegation set forth in Paragraphs 1 through 48 above as if each were fully set forth herein.

75.     Plaintiffs are the owners of the unregistered AOK TOOLING LIMITED Mark.

76.     Plaintiffs own nationwide common law rights to the AOK TOOLING LIMITED Mark based on the continuous and extensive bona fide use of this mark by Plaintiffs and their authorized distributors in interstate commerce in the United States to identify and promote Plaintiffs' AOK N-95 Masks and other goods, over the past seven years since at least 2013.

77.     The AOK TOOLING LIMITED Mark is an enforceable, valid and subsising trademark in full force and effect.

78.     Plaintiffs were the first to use the AOK TOOLING LIMITED Mark in commerce in the United States and have priority of trademark use over Defendant, who, long after Plaintiffs' first trademark use, recently began using the identical AOK TOOLING LIMITED Mark in interstate commerce in the United States to sell AOK N-95 Masks.

79.     Defendant's AOK N-95 Masks are unauthorized, illegal gray market goods not intended for sale in the United States that are materially different from the goods Plaintiffs and their authorized distributors sell in the United States.

80.     The version of AOK N-95 Mask apparently sold by Defendant, pictured above in paragraph 28, is Model 20160001 (TC-84A-8091), while the product Plaintiffs generally offer in the United States is Model 20180022 (TC-84A-8449).

81.     Although the two models are similar in appearance, Model 20180022 (TC-84A-8449) has a bigger nose bridge, which offers a better fit (i.e. less air leakage) and is more suitable for healthcare workers.  All N95 masks are required to go through a fit test when used by healthcare professionals, and Model 20180022 (TC-84A-8449) would offer a much better seal against contaminates.

82.     The specific products of Defendant pictured above in paragraph 28 (if in fact manufactured by Plaintiffs) were also produced only as part of a "sample" batch as indicated by

numbering appearing on the mask, not a standard production run.  They are intended only for Plaintiffs' limited solicitation purposes.

83.    The products of Defendant pictured above in paragraph 28 are also packaged in a materially and substantially different way than Plaintiffs' authorized products, including those distributed by 12th Man.

84.    Upon information and belief, Defendant does not distribute its AOK N-95 Masks with appropriate instructional and reference information or warranty terms.

85.    Upon information and belief, Defendant's AOK N-95 Mask violate NIOSH regulations, including because Defendant has not included in every package instructions for use, whereas Plaintiffs' authorized products are NIOSH compliant.

86.    Defendant's AOK N-95 Masks, sold outside the authorized channel, are not supported by Plaintiffs' warranty or ability to implement product recalls.

87.    Upon information and belief, Defendant has advertised and sold Plaintiffs' product at different pricing relative to the pricing available from authorized dealers such as 12th Man, which is likely to be concerning to customers as indicative of counterfeiting or disreputable price gouging.

88.    Defendant is able to offer different pricing than Plaintiffs' authorized distributors because it acquires Plaintiffs' product from emerging overseas markets including mainland China where the pricing of the product is lower than it is in the United States and because Defendant does not have an authorized dealership agreement with Plaintiffs where Plaintiffs could set pricing controls to manage their brand reputation and consistency.

89.    The above-described differences are material because, among other things, they:

a.      Diminish Plaintiffs' ability to offer post-sale customer service and quality control;

b.      Diminish Plaintiffs' ability to effectively conduct a recall or take other market action with respect to a product;

c.      Eviscerate Plaintiffs' ability to attest to the integrity of the supply chain, including assessing whether the product has been appropriately handled, stored, shipped, etc.;

d.      Diminish Plaintiffs' ability to guarantee the quality or integrity of Plaintiffs' products;

e.      Do not provide customers the same quality and service benefits and assurances as are provided by Plaintiffs through their tightly-controlled agreement with, for example, 12th Man as an authorized distributor;

f.      Cause customers to question the authenticity, reliability, and quality of Plaintiffs' products;

g.      Create a likelihood of customer confusion as to the source of the products and the warranties offered on those products;

h.      Create a likelihood of customer confusion by instigating suspicion about whether the product is knock-off, "bootleg," a "fake replica," a "cheap version," or gray market;

i.      Create a likelihood of customer confusion by instigating suspicion about whether the product has been tampered with or altered;

j.      Create a likelihood of customer confusion by instigating suspicion about whether the product is authorized for sale in the United States by the FDA;

19

k. Create a likelihood of customer confusion by instigating suspicion, frustration, or concern about foreign-market pricing as compared to United States market pricing;

l. Cause customer confusion, doubt, disappointment or frustration when product size and quantity expectations are not met;

m. Cause customer confusion, disappointment or frustration when Plaintiffs refuse to honor their manufacturer's warranty or refuse to return, refund, or exchange a product not purchased from Plaintiffs or through their authorized distributors;

n. Concern the sale of goods that are not fully authorized by the FDA for sale in the United States or NIOSH; and,

o. Tarnish the commercial magnetism of the AOK TOOLING LIMITED trademark.

90. The gray market sales within the United States of Plaintiffs' products that are materially different from the Plaintiffs' products sold by Plaintiffs' authorized distributors within the United States are likely to cause confusion or mistake as to Defendant's affiliation, connection, or association with Plaintiffs or likely to cause confusion as to Plaintiffs' approval for Defendant to sell Plaintiffs' products.

91. The actions of Defendant, in using the AOK TOOLING LIMITED Mark, constitute unfair competition, false and misleading descriptions of fact, misrepresentations of fact, or designation of origin concerning Plaintiffs' products, including palming off, that is, passing off by mispresenting Plaintiffs' goods as Defendant's own.

92.     Defendant is using the AOK TOOLING LIMITED Mark with full knowledge that the mark is associated exclusively with Plaintiffs.

93.     After being notified of its unfair competition, false description, and false designation activity, Defendant failed to take action to halt its offer for sale of Plaintiffs' products.

94.     Defendant has continued to supply its AOK TOOLING LIMITED product even after it knew or had reason to know that it was engaging in violations of 15 U.S.C. § 1125.

95.     Defendant's acts are willful and deliberate and with the intent to reap the benefit of Plaintiffs' goodwill and reputation.

96.     Defendants' aforesaid conduct has caused significant damage to Plaintiffs and their business relationships.

97.     As a proximate result of Defendant's actions, Plaintiffs have suffered, and continue to suffer immediate and irreparable harm.

98.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's unfair competition, false and misleading descriptions of fact, misrepresentations of fact, or designation of origin, and palming off and unless Defendant is permanently enjoined, Plaintiffs will continue to suffer irreparable harm.

99.     Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

100.    Plaintiffs are entitled to recover their actual damages caused by Defendant's unfair competition, false and misleading descriptions of fact, misrepresentations of fact, or designation of origin, and palming off to disgorge Defendant's ill-gotten profits from its wrongful conduct.

101.    Plaintiffs are entitled to enhanced damages and attorney's fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith engaged in

unfair competition, false and misleading descriptions of fact, misrepresentations of fact, or designation of origin, and palming off.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs seek judgment as follows:

1.     Enjoining Defendant and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendant and all those in active concert and participation with Defendant and each of them who receives notice directly or otherwise of such injunction from:

   a.     the sale of infringing, materially different gray market Plaintiffs' products;

   b.     imitating, copying, or making unauthorized use of the Plaintiffs' AOK TOOLING LIMITED Mark;

   c.     unless authorized in writing by Plaintiffs, importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product bearing the AOK TOOLING LIMITED Mark;

   d.     using any simulation, reproduction, knock-off, copy, or colorable imitation of the AOK TOOLING LIMITED Mark in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any product;

   e.     using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or the public to believe that any infringing product manufactured, distributed, or sold by Defendant is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs;

f.      engaging in any other activity constituting unfair competition with Plaintiffs, or constituting infringement of the AOK TOOLING LIMITED Mark;

g.      transferring, consigning, selling, shipping, or otherwise moving any goods, packaging, or other materials in Defendant's possession, custody, or control bearing any simulation, reproduction, knock-off, copy, or colorable imitation of Plaintiffs' AOK TOOLING LIMITED Mark.

h.      disposing of, destroying, altering, moving, removing, concealing, tampering with, or in any manner secreting any business records (including computer records) of any kind, including invoices, correspondence, books of account, receipts, or other documentation relating to or referring in any manner to the manufacture, advertising, promotion, receipt, acquisition, importation, purchase, sale, offer for sale, or distribution of any merchandise bearing any simulation, reproduction, knock-off, copy, or colorable imitation of the AOK TOOLING LIMITED Mark; and,

i.      instructing, assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above.

2.      Directing that Defendant remove any and all listings in its possession, custody, or control offering for sale of products that infringe upon Plaintiffs' AOK TOOLING LIMITED trademark.

3.      Directing that Defendant make available to Plaintiffs for review, inspection and copying all books, records (including, but not limited to, all hard drives on computers used for business purposes, including, but not limited to, servers, as well as all computer disks and back-up media) and all other documents concerning all transactions, relating to the purchase,

importation, promotion, sale, or unauthorized use of products or packaging incorporating the AOK TOOLING LIMITED Mark, and provide to Plaintiffs the names, addresses, and all other contact information in Defendant's possession for the source(s) of such products and packaging, including all manufacturers, distributors, and suppliers.

4.      Directing that Defendant recall from distributors, retailers, and all other recipients any and all products and packaging sold or distributed by Defendant under or in connection with the AOK TOOLING LIMITED Mark and, upon recall, to deliver such goods to Plaintiffs.

5.      Directing that Defendant cancel any advertising, marketing, and promotion, regardless of the medium (print and electronic), including, but not limited to, on Defendant's website, using the AOK TOOLING LIMITED Mark.

6.      Directing that Defendant deliver to Plaintiffs' counsel for destruction at Defendant's costs all signs, promotional materials, advertising material, or catalogs, and any other item that bears, contains, or incorporates the AOK TOOLING LIMITED Mark.

7.      Requiring Defendant to account for and pay over to Plaintiffs the profits realized by Defendant from its infringement of Plaintiffs' AOK TOOLING LIMITED Mark and its unfair competition with Plaintiffs in the amount of three times Defendant's sales.

8.      Enhancing, in the Court's discretion, Plaintiffs' recovery based on Defendant's profits for such sum as the Court shall find to be just according to the circumstances of the case.

9.      Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful trademark infringement and unfair competition.

10.      Awarding Plaintiffs damages in an amount to be determined at trial for Defendant's common law unfair competition.

11.     Awarding to Plaintiffs interest, including pre-judgment and post-judgment interest, on the foregoing sums.

12.     Awarding Plaintiffs their costs in this action pursuant to 15 U.S.C. § 1117(a).

13.     Finding this an exceptional case and awarding reasonable attorney's fees to Plaintiffs pursuant to 15 U.S.C. § 1117(a).

14.     Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services offered, advertised, or promoted by or on behalf of Defendant are authorized by Plaintiffs.

15.     Directing that Defendant file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the above.

16.     Awarding Plaintiffs any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable in accordance with Federal Rule of Civil Procedure 38(b).

DATED:  July 24, 2020

Respectfully submitted,

/s/ *Paul J. Kennedy*
Paul J. Kennedy, Esq.,
Sean P. McConnell, Esq.
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Tel: (215) 981-4000
Fax: (215) 981-4750
paul.kennedy@troutman.com
sean.mcconnell@troutman.com

John M. Bowler, Esq., GA Bar 071770
(Pro Hac Application to Be Filed)
Lindsay Mitchell Henner, Esq., GA Bar No. 272310
(Pro Hac Application to Be Filed)
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2216
Tel: (404) 885-3000
Fax: (404) 885-3995
john.bowler@troutman.com
lindsay.henner@troutman.com
*Counsel for Plaintiffs*

# EXHIBIT A

Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA  30308-2216



troutman.com

---

**John M. Bowler**
john.bowler@troutman.com

May 26, 2020

**VIA EMAIL (OFFICE@GENTOXMEDICALSERVICES.COM)
AND OVERNIGHT FEDERAL EXPRESS – SIGNATURE REQUESTED**

Mr. Uriah Kennedy
Chief Executive Officer
Gentox Medical Services, LLC
1910 West 1040 South
Salt Lake City, Utah 84104

Re:     *Unauthorized Sale of Tooling Express, Inc. and AOK Tooling Ltd. 3D N-95 Face Masks
        by Gentox Medical Services, LLC*

Dear Mr. Kennedy,

Our law firm represents Tooling Express, Inc. and AOK Tooling Ltd. ("Clients") who specialize, among other things, in the design and fabrication of high-quality respirators and personal protective equipment.  We have been asked to investigate and actively pursue the following matter of great concern to our Clients.

Ms. Susan Gustafson, an Infection Prevention Consultant with the state of Minnesota Division of Homeland Security and Emergency Management ("HSEM")  alerted our Clients on April 27, 2020 that HSEM has received communications from Gentox Medical Services, LLC ("Gentox") who claims it has a shipment of a significant number of our Clients' NIOSH-certified 3D N-95 Face Masks with AOK Tooling Limited's markings ("N-95 Masks") for resale in the United States and intended to solicit HSEM's business for profit.  Gentox is not an authorized distributor of our Clients' products in the United States.  Rather, the only United States distributor of our Clients' N-95 Masks at the time is 12th Man Technologies, Inc. ("12th Man Technologies"), who sells the N-95 Masks under the federally registered SoftSeal® brand.

Our Clients have no records of any sale of N-95 Masks by them to Gentox.  12th Man Technologies has also confirmed it never offered our Clients' N-95 Face Masks to Gentox for resale.  Furthermore, we are informed that when 12th Man Technologies contacted Gentox and requested that Gentox produce a purchase order for the N-95 Face Masks, Gentox refused to do so.

Our Clients are very concerned that Gentox is importing without authorization what purports to be our Clients' N-95 Masks from sources other than our Clients or 12th Man Technologies.  Of

Mr. Uriah Kennedy
May 26, 2020
Page 2



acute concern is the possibility that Gentox is importing, reproducing, promoting and marketing, and offering for resale counterfeit N-95 masks with our Clients' markings that reach frontline health care workers and consumers in the United States, putting lives at risk. The potential of counterfeit goods should also be of great concern to Gentox, since its resale of inferior goods could expose Gentox to liability for the injuries caused by counterfeit versions of our Clients' products. We therefore trust that we will receive your full cooperation.

Gentox should understand that the federal Lanham Act (and similar state laws) makes it illegal to use any copy of a trademark in connection with the advertising of any goods or services when such use is likely to cause confusion as to the source of those goods or services. The Lanham Act also makes it illegal for any person or entity to use a word or name in a manner that is likely to cause confusion as to the affiliation, connection or association with another person or entity. 15 U.S.C. § 1125(a). Use of spurious N-95 Face Masks with AOK Tooling Limited's markings for resale in the United States is the very type of deception that the Lanham Act prohibits. The Lanham Act provides for injunctive relief as well as damages, which include a defendant's profits, upon the showing of a likelihood of confusion. 15 U.S.C. § 1117. A court may also treble the damages and award attorney fees. These statutes are without limitation or waiver of other causes of action that provide monetary and injunctive relief against infringers and counterfeiters.

Gentox's unauthorized activities are damaging our Clients, who demand the following:

1. That Gentox immediately provide our office with all purchase orders, list of existing inventory, invoices, shipping records, photographs, images, webpages, and communications (including emails) in its possession, custody, or control relating to the importation of and offer for resale and sale of our Clients' N-95 Masks or any masks purporting to be our Client's N-95 Masks.

2. During communications with our Clients' distributor, Gentox claimed that it has a Shanghai office and that representatives from the Shanghai office had visited our Clients' factory in China and that our Clients' representatives had agreed to supply Gentox our Clients' N-95 Mask. Gentox shall provide our office with the contact information for its Shanghai office, the names of the Shanghai office representative who visited our Clients' facilities, and the names of our Clients' employees who had allegedly agreed to supplying the N-95 Masks.

3. That Gentox provide our office with an affidavit from a corporate officer setting forth the name, address, and affiliation of each individual or company from whom Gentox has sourced, is sourcing, or plans to source our Clients' N-95 Masks.

4. That Gentox warrant and represent in writing that (i) all information provided to our Clients is truthful and accurate, and (ii) that neither Gentox nor any person acting under its direction will again import, promote, market, offer for resale, or sell our Clients' products without authorization, including the N-95 Masks.

In addition, Gentox now has a duty to preserve all documents, electronically-stored information and other evidence that may be relevant to the matter discussed above until a final resolution is

Mr. Uriah Kennedy
May 26, 2020
Page 3



reached.  This duty of preservation extends to, but is not limited to, e-mails, data files, telephone logs, containers, photos, calendars, and purchasing and sale records that are located on Gentox's computer networks, e-mail servers, individual computer workstations, and external drives, or are located on any of those devices within Gentox's control but not owned by Gentox, such as Gentox's web hosting service.  Specifically, but not exclusively, Gentox is on notice that it must preserve all evidence of all of its purchases, importation, marketing and promotion, and offer for resale and sale of our Clients' N-95 Masks, a duty that extends to Gentox's employees and agents. We request that Gentox notify its employees and agents of this retention request immediately.  We are hopeful that we can resolve this dispute short of formal proceedings, but the above-referenced duties must be satisfied in order to do so.

**Be advised that if Gentox fails to provide to us by <u>5:00 PM (EDT) on Wednesday, June 3, 2020</u>, we will assume that no response is forthcoming and shall advise our client accordingly.**  If Gentox is unwilling to resolve this matter as noted above, our Clients may take legal action against Gentox without further notice to you. We trust you understand the seriousness of Gentox's actions in this matter and look forward to your full and prompt response.  This letter is without prejudice to our Clients' rights and claims, which are expressly reserved.

We appreciate your timely response.

Sincerely,

/s/ John M. Bowler

John M. Bowler

JMB/pk


cc:      Tooling Express, Inc.
         AOK Tooling Ltd.